UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

NEFTALI GOMEZ DIAZ,
an individual,

      Case No.:

    Plaintiff,
v.

T-MOBILE USA, INC.
a foreign for-profit corporation,
ALLIANCE ONE RECEIVABLES
MANAGEMENT, INC.,
a foreign limited liability company,

    Defendants.
_____/

## COMPLAINT

**COMES NOW**, Plaintiff, NEFTALI GOMEZ DIAZ (hereinafter, "Plaintiff"), by and through the undersigned counsel, and hereby files this Complaint against Defendants, T-MOBILE USA, INC., (hereinafter, "T-Mobile"), and ALLIANCE ONE RECEIVESABLES MANAGEMENT, INC. (hereinafter, "Alliance") (hereinafter collectively, "Defendants"). In support thereof, Plaintiff states:

### PRELIMINARY STATEMENT

1.    This is an action for damages brought by an individual consumer for T-Mobile and Alliance's violations of the Florida Consumer Collection Practices Act, Chapter 559, Florida Statutes (hereinafter, the "FCCPA") and Fair Debt Collection Practices Act, 15 United States Code, Section 1692 (the "FDCPA") wherein both the above Defendants attempted to collect a consumer debt directly from Plaintiff that

1

Plaintiff did not owe.

## JURISDICTION, VENUE & PARTIES

2. Jurisdiction of this Court arises under 28 United States Code, Section 1331, pursuant to the FCRA, 15 United States Code Section 1681, *et seq*.

3. Defendants are subject to the jurisdiction of this Court as Defendants each regularly transact business in this District.

4. At all material times herein, Plaintiff is a natural person residing in Pinellas County, Florida.

5. At all material times herein, T-Mobile USA, Inc., is a foreign for-profit corporation existing under the laws of the state of Delaware with its principal place of business located at 12920 S.E. 38th Street, Bellevue, Washington, 98006.

6. At all material times herein, Defendants are foreign entities that, themselves and through their subsidiaries, regularly collect debts from consumers in Pinellas County, Florida.

7. At all material times herein, Alliance is a corporation existing under the laws of the state of Delaware with its principal place of business located at 512 Township Line Road, Suite 301 Blue Bell, PA 19422.

## FCCPA AND FDCPA STATUTORY STRUCTURE

19. The FCCPA is a state consumer protection statute, modeled after the FDCPA, a statute designed to prohibit unfair, deceptive, and abusive practices in the collection of consumer debts as well as to protect against the invasion of individual privacy. 15 U.S.C. §§ 1692(a) and (e); Fla. Stat. §§ 559.55 and 559.77(5).

20. The FDCPA imposes civil liability on any debt collector—and the FCCPA imposes liability on any creditor/person as well as any debt collector—who "regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due to another" and both statutes prohibit engaging in particular violative conduct in connection with collecting consumer debts. 15 U.S.C. § 1692(a)(6); Fla. Stat. § 559.55(5).

21. Specifically, the FDCPA and FCCPA prohibit unlawful debt collection "communication" with consumer debtors, which is defined as "the conveying of information regarding a debt directly or indirectly to any person through any medium." 15 U.S.C. § 1692(a)(2); Fla. Stat. § 559.55(2) (emphasis added).

22. For example, the FDCPA prohibits a debt collector from using false, deceptive, or misleading representations or means in connection with the collection of any consumer debt. See 15 U.S.C. §§ 1692(d)-(e).

23. Similarly, the FCCPA prohibits a person from attempting to collect a consumer debt that is known to be illegitimate. See Fla. Stat. §§ 559.72 (9).

**GENERAL ALLEGATIONS**

13. At all material times herein, Plaintiff is an alleged "consumer" or "debtor" as defined by the FCRA, Section 1681a(c) and the FCCPA, Section 559.55(8) and the FDCPA, Section 1692a(3) because he is an individual and allegedly obligated to pay a debt.

14. At all material times herein, T-Mobile and Alliance, by and through their subsidiaries, regularly extend credit—and credit report debts associated with the

same—allegedly owed by consumers residing in Pinellas County, Florida.

15. At all material times herein, T-Mobile and Alliance report information concerning alleged collections accounts that were opened as a result of identity theft fraud, or mistake, including Plaintiff's T-Mobile Account No.: 201595525.

16. At all material times herein, both T-Mobile and Alliance attempted to collect an alleged consumer debt, including but not limited to, a balance allegedly owed for a T-Mobile router Plaintiff no longer owed or possessed. (hereinafter, the "Alleged Debt").

17. At all material times herein, Plaintiff closed his Account in May 2025 and dropped off his T-Mobile home internet router in person at a T-Mobile store in Clearwater, Florida on June 2nd, 2025. Plaintiff did not re-open the Account or fail to close the Account properly. Plaintiff did not authorize any individual or entity to open another Account in his name, Plaintiff did not use the Account in any manner upon closing, and Plaintiff did not receive the benefit of any goods or services as a result of any transactions made using the Account after it was terminated.

30. At all material times herein, Alliance uses interstate mail, and the principal purpose of its business is to collect debt.

31. At all material times herein, both T-Mobile and Alliance are considered a "person" who furnishes information to credit reporting agencies as provided in the FCRA and as defined by 15 United States Code, Section 1681s-2.

32. At all material times herein, T-Mobile and Alliance are considered a "person" subject to the FCCPA, Section 559.72. *See* Fla. Stat. § 559.55(3); *Schauer v.*

4

*General Motors Acceptance Corp.*, 819 So. 2d 809 (Fla. 4th DCA 2002).

33. At all material times herein, T-Mobile's and Alliance's conduct, with regard to the Alleged Debt complained of below, qualifies as "communication" as defined by the FCCPA, Section 559.55(2) and the FDCPA, Section 1692a(2).

34. At all material times herein, T-Mobile and Alliance furnish information to Equifax, Experian, and Trans Union regarding the Account and the corresponding Alleged Debt.

35. At all material times herein, Defendants act themselves or through their agents, employees, officers, members, directors, successors, assigns, principals, trustees, sureties, subrogees, representatives, third-party vendors, and insurers.

36. All necessary conditions precedent to the filing of this action occurred, or Defendants waived or excused the same.

## FACTUAL ALLEGATIONS

37. Beginning on or around September of 2024, Plaintiff obtained services for his phone and home internet through T-Mobile.

38. Due to Plaintiff's dissatisfaction with the cellular service, coverage, and customer service provided by T-Mobile, Plaintiff cancelled his services about a year later, on or around May of 2025.

39. On June 2nd, 2025, Plaintiff returned his 5G home router internet device in person to a T-Mobile local store in Clearwater, Florida.

40. The router can be referenced by serial number: 610214717115 located on the back of the box and device that was returned to T-Mobile.

41. Plaintiff had not received a receipt or tracking number for the router from T-Mobile.

42. After dropping off the device, Plaintiff called T-Mobile and informed them that he had dropped off his device for their records.

43. T-Mobile advised Plaintiff that they would call the Clearwater store to verify the device was indeed dropped off.

44. On or around July of 2025, Plaintiff received his first collection letter from T-Mobile, advising he owed for the device on the above Account for services from August 24th, 2025- through September 23rd, 2025, in the amount of $336.16.

45. These charges were from the same device that Plaintiff dropped off in person in June of 2025 when he ended his services with Defendant, T-Mobile.

46. Plaintiff was also issued a $7.00 fee for the above invoice which T-Mobile alleged was a late fee.

47. Plaintiff promptly called T-Mobile and advised of the collection letter.

48. T-Mobile advised telephonically that they would then remove the debt and wait for the device to arrive to their corporate offices.

49. Plaintiff continued to receive collection letters from T-Mobile regarding this device.

50. Plaintiff then began receiving collection letters from Alliance One Receivables Management Inc. beginning on September 5, 2025.

51. Simultaneously, Plaintiff was also receiving phone calls from Alliance in an attempt to collect the alleged debt from the Account he no longer owed.

52. Further, Plaintiff has reached out to T-Mobile multiple times since the collection letters began to advise them of the issue and not only has the issue not been resolved, but T-Mobile employees are no longer able to verify account ownership with Plaintiff because he is no longer an active client as he cancelled her personal account in May of 2025.

53. T-Mobile then advised Plaintiff to come to the store in person *again* for account validation to further discuss the account in question.

54. Plaintiff traveled to T-Mobile again on or around October 10, 2025, and spoke to T-Mobile's Corporate representative on the phone with the assistance of a T-Mobile store representative in order to come to a resolution.

55. Plaintiff nor the T-Mobile representative were able to resolve the issue in store.

56. On or around October 13, 2025, Plaintiff visited the T-Mobile store for a third time and spent 2 additional hours in the store on the phone again accompanied by the T-Mobile store manager.

57. Plaintiff was unable to get T-Mobile to resolve this issue.

58. The store manager that spoke with Plaintiff was unable to resolve this issue.

59. T-Mobile relies on the argument that they must verify with the store that the device was dropped off.

60. The Account notes on T-Mobile's own documents show that the Account had already been verified with the store.

61. T-Mobile relayed to Plaintiff that there is no resolution to this issue and has left Plaintiff without remedy.

### **T MOBILE'S AND ALLIANCE'S DEBT COLLECTION COMMUNICATIONS**

62. Plaintiff cancelled his home internet services with T-Mobile on or about May of 2025.

63. Plaintiff returned his home internet router back to T-Mobile on June 2nd, 2025.

64. On or about July of 2025, T-Mobile sent a collection letter to Plaintiff in its attempt to collect the alleged debt for Plaintiff's T-Mobile home internet router that he previously returned.

65. Plaintiff called T-Mobile to relay the mistake and T-Mobile advised that they would remove the debt and wait for Plaintiff's internet device to arrive.

66. Plaintiff later began receiving collection letters from Alliance.

67. More specifically, Alliance's collection letter asserted that Plaintiff owed a balance of $336.16 for the router itself.

68. Plaintiff received another letter from T-Mobile on October 16, 2025 advising that the balance on the Account was still owed in the amount of $336.16 from the same service period.

69. T-Mobile and Alliance's conduct, as described above, is knowing, willful, and continuing violation of Plaintiff's rights, as enumerated under Florida state and federal law.

70. Given T-Mobile and Alliance's conduct and its apparent intention and ability to continue to collect the Alleged Debt directly from Plaintiff, Defendants are in violation of said debt collection laws.

71. Plaintiff needs and is entitled to injunctive relief with respect to T-Mobile and Alliance's debt collection communications in violation of the FCCPA.

72. T-Mobile and Alliance's conduct served no purpose other than to abuse and harass Plaintiff into paying the Alleged Debt, leading Plaintiff to believe that despite not owing the Alleged Debt personally as he closed his Account and dropped off his internet router with T-Mobile in June of 2025, Plaintiff had no choice but to pay the Alleged Debt or continue to endure T-Mobile and Alliance's unlawful debt collection practices.

## DAMAGES

73. Plaintiff is a pilot in the United States Air Force and is constantly away from home, thus making it difficult for Plaintiff to continue fighting these charges that do not belong to him.

74. Plaintiff has spent his time off work attempting to remedy this issue with Defendants including over 17 hours on the phone with T-Mobile's corporate office and over 5 in person store visits to no avail.

75. Further, as a result of Defendants' actions, Plaintiff suffered emotional distress, anxiety, inconvenience, frustration, annoyance, fear, and confusion, believing that despite Plaintiff's exhaustive efforts to convey to Defendants that he dropped off his internet router well before these collection letters came to fruition, further did not

initiate or authorize the opening of any other Account in connection with either Defendant, Plaintiff must simply endure T-Mobile and Alliance's ongoing attempts to collect the Alleged Debt.

76. Plaintiff retained Swift, Isringhaus, Dubbeld & McEleney, PLLC for the purpose of pursuing this matter against Defendants, and Plaintiff is obligated to pay his attorneys a reasonable fee for their services.

### COUNT ONE:
### UNLAWFUL DEBT COLLECTION PRACTICE –
### VIOLATION OF FLORIDA STATUTES, SECTIONS 559.72(7) and (9)
(As to both T Mobile and Alliance)

Plaintiff re-alleges paragraphs one (1) through seventy-six (76) as if fully restated herein and further states as follows:

77. T-Mobile and Alliance are subject to, and violated the provisions of, Florida Statutes, Section 559.72(7) by communicating with Plaintiff in an attempt to collect an alleged consumer debt through means which can reasonably be expected to abuse or harass Plaintiff and violated Florida Statutes, Section 559.72(9) by communicating with Plaintiff in an attempt to collect the Alleged Debt despite T-Mobile and Alliance both possessing knowledge that the Alleged Debt is not legitimately owed by Plaintiff.

78. Specifically, as stated herein, Plaintiff was not and is not personally liable for the Alleged Debt, because: (i) Although Plaintiff did personally apply for or receive a service linked to the Account as he maintained a T-Mobile Account from on or around September 2024 to May of 2025, he closed the Account before the dates of

service listed in the collections notices by Defendants and dropped off the home router associated with the Account in question, (ii) Plaintiff did not re-open the Account, did not authorize any person to open the Account in Plaintiff's name or on Plaintiff's behalf; (iii) Plaintiff possessed no knowledge of the Account that was alleged opened until he received a collection letter from T-Mobile regarding the alleged Account as Plaintiff only had knowledge that he had closed the account and forfeited services; (iv) Plaintiff did not receive the benefit of any money, goods, or services from any charges or transactions made using the Account as Plaintiff's service was not active at the time he was being charged.

79. Plaintiff repeatedly provided the above-listed information including his name and address, his account numbers associated with his previous T-Mobile Account, and his history of transactions and a record of presenting to T-Mobile to close the account and to later attempt resolution.

80. As such, T-Mobile and Alliance possessed actual knowledge that Plaintiff did not legitimately owe the Alleged Debt, yet T-Mobile and Alliance continued to communicate directly with Plaintiff in an attempt to collect the Alleged Debt.

81. More specifically, despite possessing knowledge that the Alleged Debt was not legitimately incurred by Plaintiff and therefore not legitimately owed by Plaintiff, T-Mobile sent a collection letter to Plaintiff demanding payment on the Alleged Debt.

82. As such, T-Mobile and Alliance attempted to collect the Alleged Debt and asserted a legal right that does not exist in its collection letter made in an attempt

to collect the Alleged Debt from Plaintiff.

83. Despite Plaintiff's exhaustive efforts advising that the Alleged Debt was not owed by him as he had terminated his account in May of 2025 and had not had any internet device or equipment from T-Mobile to operate services during the dates of service associated with this debt, T-Mobile and Alliance continued to communicate with Plaintiff in an attempt to collect the Alleged Debt.

84. T-Mobile and Alliance's conduct served no purpose other than to abuse and harass Plaintiff into paying the Alleged Debt, leading Plaintiff to believe that despite not re-opening the Account personally nor authorizing another individual to open the Account in his name or make charges to the same, and despite receiving no benefit or service from the Account for the dates of service alleged, Alliance and T-Mobile could and would continue to attempt to collect the Alleged Debt from Plaintiff unless and until Plaintiff paid the Alleged Debt in full.

85. As a result of T-Mobile and Alliance's actions, Plaintiff suffered emotional distress, anxiety, inconvenience, frustration, annoyance, fear, and confusion, believing that despite not owing the Alleged Debt personally, Plaintiff must simply endure Defendant's ongoing and invasive debt collection communications.

86. T-Mobile and Alliance's willful violation of, *inter alia*, the Florida Consumer Collection Practices Act as a means to collect the Alleged Debt constitutes unlawful conduct and harassment as is contemplated under Florida Statutes, Sections 559.72(7) and 559.72(9).

87. As a direct and proximate result of T-Mobile and Alliance's actions,

Plaintiff sustained damages as defined by Florida Statutes, Section 559.77.

**COUNT TWO:**
**UNLAWFUL DEBT COLLECTION PRACTICE –**
**VIOLATION OF 15 UNITED STATES CODE, SECTION 1692e, e(2)(A), and**
**e(10)**
**(As to Alliance only)**

Plaintiff re-alleges paragraphs one (1) through seventy-six (76) as if fully restated herein and further states as follows:

88.     Alliance is subject to, and violated the provisions of, 15 United States Code, Section 1692e, e(2)(A), e(8), and e(10) by using false representations and deceptive means in attempting to collect the Alleged Debt, including by falsely representing the amount, legal status, or character of the Alleged Debt.

89.     Specifically, Alliance possessed actual knowledge that the account was closed, that Plaintiff did not re-open the account or authorize any other individual to open the accounts in his name and likewise did not receive the benefits if any goods or services forming the basis of the Alleged Debt and Plaintiff repeatedly advised Defendants that he did not owe the Alleged Debt for such reasons.

90.     Despite knowing that Plaintiff did not owe the Alleged Debt, Alliance sent at least one (1) letter to Plaintiff asserting a balance owed by Plaintiff with respect to the Alleged Debt in its attempts to collect the Alleged Debt.

91.     Moreover, Alliance falsely and deceptively asserted that they could and would continue to collect the Alleged Debt from Plaintiff unless and until Plaintiff paid the Alleged Debt.

92.     Alliance's above-referenced conduct attempts to deceive and mislead

13

Plaintiff into believing that Plaintiff must immediately make payment to Alliance on the Alleged Debt or continue to endure Alliance's unlawful collection attempts, the repetitive transfer of the Alleged Debt to a new debt collector, and potential derogatory credit reporting of the Alleged Debt as owed by Plaintiff personally.

93. As a direct and proximate result of Alliance's actions, Plaintiff sustained damages as defined by 15 United States Code, Section 1692k.

## PRAYER FOR RELIEF

**WHEREFORE**, as a direct and proximate result of Defendants' conduct, Plaintiff respectfully requests an entry of:

a. Judgment declaring that both T Mobile and Alliance One violated the FCCPA;

b. Judgment enjoining T Mobile and Alliance One from engaging in further conduct in violation of the FCCPA;

c. Judgment against T Mobile and Alliance One for maximum statutory damages under the FCCPA;

d. Judgment against Alliance One for maximum statutory damages for violations of the FDCPA;

a. Actual damages in an amount to be determined at trial;

b. Compensatory damages in an amount to be determined at trial;

c. Punitive damages in an amount to be determined at trial;

d. An award of attorney's fees and costs; and

e. Any other such relief the Court may deem proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues triable by right.

## SPOLIATION NOTICE AND DEMAND TO RETAIN EVIDENCE

Plaintiff hereby gives notice to Defendants and demands that Defendants and their affiliates safeguard all relevant evidence—paper, electronic documents, or data—pertaining to this litigation as required by law.

Respectfully submitted,

**SWIFT LAW PLLC**

*/s/ Jon P. Dubbeld*
Jon P. Dubbeld, Esq., FBN 105869
11300 4th Street N., Suite 260
St. Petersburg, FL 33716
Phone: (727) 755-3676
Fax: (727) 255-5332
jdubbeld@swift-law.com
jmurphy@swift-law.com
*Counsel for Plaintiff*